1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEIRON M. ELIAS, | Case No. 2:21-cv-06052-MWF-JC |
| Plaintiff, | |
| v. | ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER |
| C/O ROSAS, et al., | |
| Defendants. | |

## I.    INTRODUCTION

On July 27, 2021, plaintiff Keiron M. Elias, who is in state custody, is proceeding *pro se*, and has been granted leave to proceed without prepayment of filing fees ("IFP"), filed an unsigned Civil Rights Complaint ("Original Complaint" or "OC") pursuant to 42 U.S.C. § 1983 ("Section 1983").  On November 11, 2021, the Court screened and dismissed the Original Complaint with leave to amend.  (Docket No. 8).

On April 26, 2022, plaintiff filed the operative First Amended Complaint (or "FAC") against three employees at California State Prison - Los Angeles County ("CSP-LAC") – (1) Correctional Officer ("C/O") Rosas, (2) Lt. Martinez, and (3) Associate Warden D. Williams – sued in their individual capacities only.  (FAC

1    at 3).[1]  Plaintiff claims defendants violated plaintiff's First Amendment right to
2    free exercise of religion, Eighth Amendment right to be free from cruel and
3    unusual punishment, and Fourteenth Amendment right to due process.  (FAC at 5-
4    12).  Plaintiff seeks $5 million in damages.  (FAC at 13).

5          As the First Amended Complaint is deficient in multiple respects, including
6    those detailed below, it is dismissed with leave to amend.

7    **II.    FIRST AMENDED COMPLAINT**

8          The First Amended Complaint, construed liberally, alleges the following:
9          Plaintiff's religious beliefs are grounded in being "God in flesh as one."
10   (FAC at 5).  On June 11, 2018, plaintiff filed an administrative complaint giving
11   notice of his religious belief and "mental therapy."  (FAC at 5).  On July 16, 2018,
12   plaintiff submitted an administrative request form seeking relief from prison staff's
13   disruptions and burdens upon his religious exercise.  (FAC at 5-6).  Administrative
14   officials granted plaintiff's request for the right to live in peace and to use
15   plaintiff's religious sacraments to ensure his "mental stability and safety" after
16   plaintiff had suffered two prior suicide attempts, and they assertedly did not
17   dispute the $5 million "civil liability" that plaintiff has placed on "any hinderence
18   [sic] or punishment for the exercise of his free will, peace and love," so long as
19   plaintiff did not harm anyone or disrupt the day-to-day operations of the prison.
20   (FAC at 6) (brackets omitted).  The prison psychologist understood that plaintiff's
21   perspective on death lends him a "strong likelihood" of committing suicide in
22   prison whenever the "evils of this world" make his depression unbearable.  (FAC
23   at 6).

24         When plaintiff was transferred to his current facility, CSP-LAC, he
25   immediately placed all staff and institutional officials on notice of his severe

26   _____

27         [1]Citations to the Original Complaint and First Amended Complaint refer to the page
     numbers from the Court's official Case Management/Electronic Case Filing (CM/ECF) system.
28   (Docket Nos. 1, 15).

depression, past suicide attempts, and need "to be left alone in peace." (FAC at 6). He also put them on notice of the $5 million liability for violating his rights. (FAC at 6).

On May 6, 2019, plaintiff was running "wind sprints" back and forth along the fence with his headphones on "a little too loud" when he "realized inmates were getting down" and an alarm was sounding. (FAC at 6-7). At this realization, plaintiff stopped running and got down "in a squat[t]ing position." (FAC at 7). Defendant C/O Rosas had the guard tower announce that all inmates needed to get down, but plaintiff ignored this announcement because he was already down. (FAC at 7). C/O Rosas then approached plaintiff and ordered him to "cuff up." (FAC at 7). Plaintiff peacefully complied and was taken to the "make shift police station in the gym" where he was forced to submit to an unclothed body inspection and was told by Rosas that he needed to be "all the way down on the ground" during alarms. (FAC at 7). Plaintiff was receptive to the counseling. (FAC at 7). Nonetheless, Rosas cited plaintiff for violating a prison rule – title 15, section 3005, of the California Code of Regulations – by "willfully delaying a peace officer in performance of duty." (See FAC at 5, 7-8, 10, 22 (Ex. B)).[2]

On May 15, 2019, defendant Lt. Martinez found plaintiff guilty of the rule violation and punished him with the loss of both yard and dayroom privileges for ninety days, depriving plaintiff of outdoor physical activity for that period, even though prison regulations assertedly prohibit depriving inmates of outdoor exercise for longer than ten days "absent extreme circumstances." (FAC at 10) (citing Cal. Code Regs. tit. 15, § 3322(c)). Defendant Williams, an Associate Warden, approved this decision. (FAC at 10).

_____

[2]The scanned copy of the disciplinary hearing report attached as Exhibit B to the First Amended Complaint on the Court's electronic docket is missing some pages. Where necessary to reference these missing pages, the Court cites the more complete copy attached to the Original Complaint. (See OC at 22-30 (Ex. C)).

1    Plaintiff was not present at the disciplinary hearing. (<u>See</u> FAC at 11-12, 22
2    (Ex. B)). Although Lt. Martinez claimed that another officer had informed him
3    that plaintiff refused to be present, Martinez did not provide any written waiver
4    from plaintiff, "[n]or did he mention such officer in his report."[3] (FAC at 11-12).
5    When plaintiff questioned Martinez about who this other officer was, Martinez
6    became evasive. (FAC at 11-12). Martinez also did not "deny that [plaintiff] did
7    not rec[ei]ve a 24 hour notice to prepare for the hearing." (FAC at 12) (brackets
8    omitted).

9    Being confined to his cell for so long caused plaintiff's depression, anxiety,
10   and suicidal thoughts to "skyrocket," making him unable to practice his "daily
11   prayers and rituals" or obtain any relief from his sacraments. (FAC at 10). He had
12   difficulty sleeping and would not clean up for himself, which caused three fights
13   with his cellmate. (FAC at 10). Plaintiff asked Lt. Martinez for the restriction to
14   be removed from his door, but he refused. (FAC at 10).

15   Based on these allegations, plaintiff appears to claim that defendants Rosas,
16   Martinez, and Williams violated his First Amendment right to free exercise of
17   religion (<u>see</u> FAC at 3, 5, 7-8); that defendant Martinez and Williams violated his
18   Eighth Amendment right to be free from cruel and unusual punishment (<u>see</u> FAC
19   at 3, 5, 10); and that defendant Martinez and perhaps also defendant Williams
20   violated his Fourteenth Amendment right to due process[4] (<u>see</u> FAC at 3, 5, 11-12).
21   ///
22   ///
23   ///
24

25   [3]This latter assertion seems to be undermined by the hearing report attached to the First
26   Amended Complaint, which expressly states that plaintiff "stated to Officer A. Serrano that he
     elected to not attend the hearing." (FAC at 22 (Ex. B)).
27
28   [4]However, as discussed below, it is unclear whether plaintiff intends to name defendant
     Williams in the due process claim.

**III.   PERTINENT LAW**

    **A.   The Screening Requirement**

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing Twombly, 550 U.S. at 555).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal

1   instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim
2   has substantive plausibility").  A claim is "plausible" when the facts alleged in the
3   complaint would support a reasonable inference that the plaintiff is entitled to relief
4   from a specific defendant for specific misconduct.  Iqbal, 556 U.S. at 678 (citation
5   omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018) ("[A]
6   [Section 1983] plaintiff must plead that each Government-official defendant,
7   through the official's own individual actions, has violated the Constitution.")
8   (quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071
9   (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against
10  *each* defendant" to satisfy Rule 8 requirements) (emphasis added).  Allegations
11  that are "merely consistent with" a defendant's liability, or reflect only "the mere
12  possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as
13  required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is
14  "plausible on its face."  Iqbal, 556 U.S. at 678-79 (citations and quotation marks
15  omitted).

16      At this preliminary stage, "well-pleaded factual allegations" in a complaint
17  are assumed true, while "[t]hreadbare recitals of the elements of a cause of action"
18  and "legal conclusion[s] couched as a factual allegation" are not.  Id. (citation and
19  quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014)
20  ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting
21  Iqbal, 556 U.S. at 678-79), cert. denied, 574 U.S. 1077 (2015).  In addition, the
22  Court is "not required to accept as true conclusory allegations which are
23  contradicted by documents referred to in the complaint," Steckman v. Hart
24  Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and
25  "need not [] accept as true allegations that contradict matters properly subject to
26  judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979,
27  988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation
28  omitted).

1    In general, civil rights complaints are interpreted liberally in order to give
2  *pro se* plaintiffs "the benefit of any doubt."  Byrd, 885 F.3d at 642 (citations and
3  internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow
4  the rules of procedure that govern all litigants in federal court, including the
5  Rule 8 requirement that a complaint minimally state a short and plain statement of
6  a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir.
7  1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro
8  se litigants are bound by the rules of procedure.") (citation omitted), cert. denied,
9  516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939,
10 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights
11 complaint may not supply essential elements of [a] claim that were not initially
12 pled.") (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation
13 marks omitted; ellipses in original).

14    If a *pro se* complaint is dismissed for failure to state a claim, the court must
15 "freely" grant leave to amend.  Cafasso v. General Dynamics C4 Systems, Inc.,
16 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d
17 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks
18 omitted).  Nonetheless, courts have the discretion to deny leave to amend in cases
19 of undue delay, bad faith, undue prejudice to the opposing party, "repeated failure
20 to cure deficiencies by amendments previously allowed," and futility.  See Foman
21 v. Davis, 371 U.S. 178, 182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted).
22 Courts have "particularly broad" discretion where a plaintiff "has previously
23 amended the complaint."  Cafasso, 637 F.3d at 1058 (citation and quotation marks
24 omitted); see also Griggs v. Pace American Group, Inc., 170 F.3d 877, 879 (9th
25 Cir. 1999) ("The trial court's discretion . . . is particularly broad where . . . a
26 plaintiff previously has been granted leave to amend.") (citations omitted).
27 ///
28 ///

1

**B.     Section 1983 Claims**

2      To state a Section 1983 claim, a complaint must allege that a defendant,

3 while acting under color of state law, caused a deprivation of the plaintiff's federal

4 rights.  42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations

5 omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted).

6 There is no vicarious liability in Section 1983 lawsuits.  <u>Iqbal</u>, 556 U.S. at 676.

7 (citing, *inter alia*, <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436

8 U.S. 658, 691 (1978)).  Hence, a government official may not be held liable under

9 Section 1983 unless the particular official's own actions caused the alleged

10 constitutional deprivation.  <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069

11 (9th Cir. 2012) (citing <u>Iqbal</u>, 556 U.S. at 676), <u>cert. denied</u>, 571 U.S. 819 (2013).

12 A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*,

13 legal) causation.  <u>See</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir.

14 2008).  Allegations regarding Section 1983 causation "must be individualized and

15 focus on the duties and responsibilities of each individual defendant whose acts or

16 omissions are alleged to have caused a constitutional deprivation." <u>Leer v.</u>

17 <u>Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping

18 conclusory allegations [regarding causation] will not suffice . . . ." <u>Id.</u> (citation

19 omitted).

20      An individual "causes" a constitutional deprivation basically when he

21 (1) "does an affirmative act, participates in another's affirmative acts, or omits to

22 perform an act which he is legally required to do that causes the deprivation"; or

23 (2) "set[s] in motion a series of acts by others which the [defendant] knows or

24 reasonably should know would cause others to inflict the constitutional injury."

25 <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting

26 <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks

27 omitted).

28 ///

1    Similarly, a government official acting in a supervisory capacity "causes" a

2    deprivation to the extent he (1) personally participates in or directs a subordinate's

3    constitutional violation; or (2) was not "physically present when the [plaintiff's]

4    injury occurred," but the constitutional deprivation can, nonetheless, be "directly

5    attributed" to the supervisor's own wrongful conduct.  Starr v. Baca, 652 F.3d

6    1202, 1207 (9th Cir. 2011), cert. denied 566 U.S. 982 (2012); see also OSU

7    Student Alliance, 699 F.3d at 1069 (citing Iqbal, 556 U.S. at 676).  Under the latter

8    theory, even absent "overt personal participation," a supervisor may be liable under

9    Section 1983 if he created, promulgated, implemented, advanced, or was otherwise

10   responsible for the continued operation of a policy that "requires subordinates to

11   commit constitutional violations," and enforcement of the policy (either by the

12   defendant-supervisor or his subordinates) proximately caused the plaintiff's

13   constitutional injury.  OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v.

14   Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960

15   (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013)

16   (supervisory officials may be held liable "even without overt personal participation

17   in the offensive act if supervisory officials implement a policy so deficient that the

18   policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a

19   constitutional violation'") (citation and internal quotation marks omitted).

20   **IV.    DISCUSSION**

21       The First Amended Complaint is deficient in multiple respects, including

22   those detailed below.

23       **A.    The First Amended Complaint Violates Rule 8(a) of the Federal**

24             **Rules of Civil Procedure**

25       Rule 8(a), as noted above, requires a complaint to provide "fair notice" of

26   who is being sued, for what particular conduct, and in what particular claim.  See

27   Twombly, 550 U.S. at 555 & n.3 (Rule 8(a) requires a complaint to give "fair

28   notice" of the particular claims being asserted against them and "the grounds upon

9

which [the claims] rest[]") (citation and quotation marks omitted); <u>McHenry v. Renne</u>, 84 F.3d 1172, 1177 (9th Cir. 1996) (purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); <u>see also</u> <u>Cafasso</u>, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint).

Plaintiff's First Amended Complaint violates Rule 8 because it fails to sufficiently clarify which defendants are sued in each claim and for which specific conduct.  As noted above, the First Amended Complaint asserts three claims – one predicated on the First Amendment Free Exercise Clause, one predicated on the Eighth Amendment, and one predicated on the Fourteenth Amendment Due Process Clause.  (<u>See</u> FAC at 5, 7-12).  In some respects, however, the basis for these claims remains unclear.  For example, plaintiff asserts that his First Amendment claim is "not based *solely* on the handcuffing, strip search and rule violation" (FAC at 7), which suggests that the claim is at least *partly* based on such conduct – and yet plaintiff never again mentions the handcuffing or strip searching, leaving it unclear how this conduct assertedly violated his First Amendment rights. Moreover, while plaintiff's Fourteenth Amendment due process claim vaguely asserts that defendant Martinez never produced a written waiver of plaintiff's presence at the hearing and did not "deny that [plaintiff] did not rec[ei]ve a 24 hour notice to prepare for the hearing" (FAC at 11-12) (brackets omitted), plaintiff never actually specifies whether he did in fact receive timely notice or waive his presence.  Plaintiff also leave unclear whether he intends to assert this due process claim against defendant Williams in addition to Martinez.  At one point early in the First Amended Complaint, plaintiff generally asserts that Williams violated plaintiff's Fourteenth Amendment rights (FAC at 3), but when setting forth the claim on subsequent pages, he refers only to Martinez in relation to his Fourteenth Amendment claim and does not mention Williams (FAC at 5, 11-12).

10

1    Accordingly, dismissal with leave to amend is warranted for failure to give
2 defendants fair notice of the claims and allegations against them, in violation of
3 Rule 8.

4    **B.    The First Amended Complaint Fails to State a First Amendment**
5         **Free Exercise Claim**

6    Prisoners "retain protections afforded by the First Amendment" including
7 the right to "the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S.
8 342, 348 (1987) (citations omitted), superseded by statute on other grounds,
9 42 U.S.C. §§ 2000cc, et seq.  However, as a consequence of incarceration, a
10 prisoner's First Amendment rights are necessarily "more limited in scope than the
11 constitutional rights held by individuals in society at large." Shaw v. Murphy, 532
12 U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that
13 are not inconsistent with his status as a prisoner or with the legitimate penological
14 objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974).

15    To state a First Amendment free exercise claim, an inmate must allege that a
16 prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a
17 sincerely held religious belief; and (2) did so in an unreasonable manner – i.e., the
18 official's actions were not "rationally related to legitimate penological interests."
19 See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033
20 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th
21 Cir. 2008) (citations omitted).  "[G]overnment action places a substantial burden
22 on an individual's right to free exercise of religion when it tends to coerce the
23 individual to forego [his or] her sincerely held religious beliefs or to engage in
24 conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1031-33
25 (citations omitted).

26    Plaintiff asserts that defendants Rosas, Martinez, and Williams violated
27 plaintiff's First Amendment rights by punishing him for his disobedience to
28 Rosas's order for all inmates to "get down on the ground" because plaintiff's

religious beliefs assertedly forbid disobedience to anyone other than himself, who is "God in flesh." (FAC at 5, 8). According to plaintiff, he "can not make such a bold religious claim to be God in flesh and be obedient to someone else's orders, especially when there is no policy in [title 15 of the California Code of Regulations] for inmates to get down during an alarm." (FAC at 8) (brackets omitted). Plaintiff further contends that because he was in a squatting positing at the time, there was no legitimate penological interest in requiring him to go down "two to three[] more inches when the incident causing the alarm was a fight (50 yards away)." (FAC at 8).

Plaintiff fails to demonstrate any First Amendment violation here. Correctional officers obviously have a strong and legitimate penological interest in requiring inmates to obey their orders and in punishing inmates' failure to do so. Moreover, there is certainly nothing unreasonable about an order to get down on the ground when an alarm is triggered to preserve order and safety during an inmate fight, no matter how unnecessary plaintiff may believe this was. Plaintiff fails plausibly to allege that this order "substantially burden[ed]" his religious beliefs. Though he claims that his beliefs "forbid[] obedience to anyone other than God (himself)" (FAC at 8), his own facts undermine this. He admits, for example, that he "stop[p]ed running and got down on the ground in a squat[t]ing position" when he realized an alarm was sounding, and he also "complied" when C/O Rosas subsequently ordered him to "cuff up." (FAC at 7). If he was able to be obedient in these respects, then he cannot plausibly claim that his sincerely held religious beliefs compelled him to disobey Rosas's order to get further "down to the ground" during the alarm, and he certainly cannot plausibly contend that this order "substantially burden[ed]" such beliefs.

In addition, to the extent this claim may be based partly on defendants' other alleged conduct, none of that conduct appears to have violated any discernible rights protected under the First Amendment. For example, plaintiff offers no facts

1   to suggest that being cuffed or strip-searched substantially burdened his beliefs in
2   any respect, aside from the implausible basis addressed above.  As for plaintiff's
3   subsequent loss of outdoor exercise privileges and the depression he allegedly
4   suffered as a result, none of plaintiff's allegations support a cognizable First
5   Amendment claim.  Although plaintiff alleges that the depression he suffered while
6   confined in his cell rendered him unable to perform his prayers and rituals (see
7   FAC at 10), he never suggests that defendants actually prohibited him from
8   practicing his religion in any respect, or that he ever lost the right or the practical
9   ability to do so.

10          As defendants never acted to "substantially burden" plaintiff's religious
11  exercise, plaintiff fails to demonstrate any First Amendment free exercise
12  violation.  See O'Lone, 482 U.S. at 348-50.

13          **C.      The First Amended Complaint Fails to State a Fourteenth**
14                  **Amendment Due Process Claim**

15          A due process claim based on prison disciplinary proceedings requires
16  allegations that state officials placed the inmate's liberty interest "at stake."
17  Wilkinson v. Austin, 545 U.S. 209, 221 (2005).  A protected liberty interest may
18  arise from the Constitution itself, such as when a change in an inmate's conditions
19  of confinement exceeds the inmate's sentence in a particularly "unexpected manner
20  . . . ."  Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted).  A protected
21  liberty interest may also arise from state policies or regulations.  See Wilkinson,
22  545 U.S. at 222 (citation omitted).  State-created liberty interests, however, are
23  "generally limited to freedom from restraint which . . . imposes atypical and
24  significant hardship on the inmate in relation to the ordinary incidents of prison
25  life."  Sandin, 515 U.S. at 484 (citations omitted).

26          In disciplinary proceedings which implicate the Fourteenth Amendment's
27  Due Process Clause, a prisoner charged with a disciplinary violation is entitled to
28  certain due process protections.  Wolff v. McDonnell, 418 U.S. 539, 564-71

1   (1974).  <u>Wolff</u> established five constitutionally-mandated procedural requirements

2   for such disciplinary proceedings.  First, "written notice of the charges must be

3   given to the disciplinary-action defendant in order to inform him of the charges and

4   to enable him to marshal the facts and prepare a defense." <u>Id.</u> at 564.  Second, "[a]t

5   least a brief period of time after the notice, no less than 24 hours, should be

6   allowed to the inmate to prepare for the appearance before the [disciplinary

7   committee]." <u>Id.</u>  Third, "there must be a 'written statement by the factfinders as to

8   the evidence relied on and reasons' for the disciplinary action." <u>Id.</u> at 564-65

9   (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate

10  facing disciplinary proceedings should be allowed to call witnesses and present

11  documentary evidence in his defense when permitting him to do so will not be

12  unduly hazardous to institutional safety or correctional goals." <u>Id.</u> at 566.  Finally,

13  "[w]here an illiterate inmate is involved . . . or [where] the complexity of the issue

14  makes it unlikely that the inmate will be able to collect and present the evidence

15  necessary for an adequate comprehension of the case, he should be free to seek the

16  aid of a fellow inmate, or . . . to have adequate substitute aid . . . from the staff or

17  from a sufficiently competent inmate designated by the staff." <u>Id.</u> at 570.  In order

18  to meet the minimum requirements of procedural due process outlined in <u>Wolff,</u>

19  the findings of a prison disciplinary board also must be supported by "some

20  evidence."[5]  <u>Superintendent, Mass. Corr. Inst., Walpole v. Hill</u>, 472 U.S. 445, 454

21  (1985).

22      Plaintiff asserts that his right to due process was violated when defendant Lt.

23  Martinez held the disciplinary hearing without plaintiff being present.  (<u>See</u> FAC at

24  5, 11-12).  Assuming that these disciplinary proceedings implicated a protected

25  liberty interest, plaintiff fails to offer clear facts demonstrating a violation of his

26  _____

27      [5]The "some evidence" standard of review applies even when an inmate alleges that a
    hearing officer has falsely found plaintiff guilty of a rules violation.  <u>Hines v. Gomez</u>, 108 F.3d
28  265, 269-70 (9th Cir. 1997), <u>cert. denied</u>, 524 U.S. 936 (1998).

due process rights.  As noted above, plaintiff vaguely alleges that Martinez never produced a written waiver of plaintiff's presence at the hearing and did not "deny that [plaintiff] did not rec[ei]ve a 24 hour notice to prepare for the hearing" (FAC at 11-12) (brackets omitted), but plaintiff never actually specifies whether he did or did not receive timely notice or waive his presence.  The hearing report attached to the First Amended Complaint expressly states that plaintiff "stated to Officer A. Serrano that he elected to not attend the hearing."[6]  (FAC at 22 (Ex. B)).  In his claim, plaintiff acknowledges Martinez's report of having been informed by another officer of plaintiff's refusal to attend – and yet plaintiff curiously asserts that Martinez did not "mention such officer in his report" and later "became avassive [sic]" when plaintiff "questioned [Martinez] on numerous occas[]ions as to who this officer was[.]"  (FAC at 11-12).  It is unclear whether plaintiff merely overlooked the officer's name (A. Serrano) in the report, or for some reason doubts that Serrano was the officer in question.  Regardless, because plaintiff is being

---

[6]If plaintiff had in fact refused to attend, then his absence would not violate his due process rights.  Indeed, as plaintiff points out, applicable prison regulations provide that an inmate need not be present if the inmate has waived attendance and either signed a written waiver or refused to sign such waiver.  (See FAC at 11) (citing Cal. Code Regs. tit. 15, § 3220(g)(1)-(3)).  Specifically, the regulation provides that an inmate must be present at a disciplinary hearing *unless*, among other circumstances, the inmate "has waived the right to be present in writing, or in the case of a refusal to sign a waiver, the refusal was witnessed by a custody officer, documented on a CDC Form 128-B (Rev. 4/74), and attached to the RVR for review by the Senior Hearing Officer at the disciplinary hearing and by the Chief Disciplinary Officer following adjudication of the rules violation report."  Cal. Code Regs. tit. 15, § 3320(g)(3).  As noted above, plaintiff asserts that Martinez "produce[d] no written waiver" from plaintiff, but it is unclear whether plaintiff instead refused to sign a waiver, and if so, if that refusal was documented and attached to the RVR for review as provided in section 3220(g)(3).  Regardless, the failure to comply with these procedural regulations in these respects would not necessarily amount to a due process violation.  See Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that a mere error of state law is not a denial of due process.") (internal quotations and citations omitted); Sandin, 515 U.S. at 482-84 (violations of state law generally not cognizable as due process claims); Peralta v. Dillard, 744 F.3d 1076, 1087 (9th Cir. 2014) (mere failure to follow prison rules not enough to establish constitutional deprivation) (citations omitted), cert. denied, 574 U.S. 1073 (2015).

evasive himself as to whether he did in fact receive notice of the hearing and refuse to attend, among other facts, he fails to show how Martinez violated his due process rights.

In addition, as noted above, it remains unclear whether plaintiff intends to assert this due process claim against defendant Williams, who is not mentioned within the claim but is vaguely asserted elsewhere to have "continue[d] the violations" of plaintiff's First, Eighth, and Fourteenth Amendment rights. (See FAC at 3, 5, 11-12). Williams, an associate warden, does not appear to have attended the disciplinary hearing. Instead, his only apparent role in the matter was to review the report and affirm Martinez's decision. (See FAC at 3, 10, 26 (Ex. B)). However, merely reviewing the report itself would not have made Williams aware of the disputed circumstances regarding notice or waiver which assertedly violated plaintiff's due process rights. Instead, the report would have informed Williams that plaintiff voluntary "elected to not attend the hearing."[7] (FAC at 22 (Ex. B)). Because there is nothing here to indicate that Williams had reason to know that plaintiff did not receive adequate notice or properly waive his right to attend the hearing, plaintiff fails to demonstrate that Williams personally caused or is liable for any due process violation.[8] See OSU Student Alliance, 699 F.3d at 1069 (government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation);

---

[7]As indicated above, plaintiff's absence from the hearing would not violate due process if he voluntarily waived his right to attend.

[8]In contrast, plaintiff's Eighth Amendment claim against Williams – which is essentially based on having subjected plaintiff to a disciplinary punishment (the loss of all outdoor exercise for ninety days) – does not suffer from the same problem because the facts of plaintiff's punishment were evident from the disciplinary report that Williams reviewed and signed (see OC at 27 (Ex. C)). Accordingly, although as noted above, dismissal of the entire First Amended Complaint based on the Rule 8 violation is warranted, the Court does not, at this juncture, dismiss plaintiff's Eighth Amendment claim against Williams (or Martinez) based on a failure to state a claim.

16

1  see also Giles v. Forncrook, 2021 WL 783547, at *11 (N.D. Cal. Mar. 1, 2021)

2  (officer who reviewed and signed disciplinary decision was not liable for alleged

3  due process violation based on fabricated underlying RVRs where plaintiff failed

4  to show that the officer was aware of any such fabrications); Fratus v. Cal. Dep't of

5  Corrs., 2014 WL 1338903, at *4 (E.D. Cal. Apr. 2, 2014) (reviewing supervisors

6  who signed disciplinary report were not liable for due process claim based on

7  hearing officer's refusal to call witnesses, which depended on that officer's own

8  weighing of factors at the hearing).

9      Accordingly, the First Amended Complaint fails to state a Fourteenth

10  Amendment due process claim.

11  **V.   ORDERS**[9]

12      In light of the foregoing, IT IS HEREBY ORDERED that the First Amended

13  Complaint is dismissed with leave to amend.[10]

14      IT IS FURTHER ORDERED that within twenty (20) days of the date of this

15  Order, plaintiff must do one of the following:

16  ///

17  ///

18

19  ───────────────

20      [9]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial
    matters.  See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can
21  dismiss complaints with leave to amend; dismissal of complaint with leave to amend is
    non-dispositive matter).  To the extent a party disagrees with such non-dispositive rulings, such
22  party may file a motion for review by the assigned District Judge within fourteen (14) days.  See
    Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-
23  dispositive, such party has the right to object to this Court's determination that the rulings are
    non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the
24  rulings herein if such party does not seek review thereof, or object thereto.
25
26      [10]The First Amended Complaint is dismissed with leave to amend against all defendants
    because it violates Rules 8 and fails to state either a First Amendment free exercise claim or a
27  Fourteenth Amendment due process claim, but, as indicated in note 8, supra, the Court does not
    deem it appropriate, at this juncture, to predicate such dismissal on the failure to state an Eighth
28  Amendment claim against defendants Martinez and Williams.

1       1.     File a Second Amended Complaint which cures the pleading defects

2  set forth herein;[11] or

3       2.     Sign and file the attached Notice of Dismissal which will result in

4  the voluntary dismissal of this action without prejudice; or

5       3.     File a Notice of Intent to Stand on First Amended Complaint,

6  indicating plaintiff's intent to stand on the First Amended Complaint despite the

7  pleading defects set forth herein, which may result in the dismissal of this action in

8  its entirety based upon such defects.

9       **Plaintiff is cautioned that plaintiff's failure timely to file a Second**

10  **Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on**

11  **First Amended Complaint may be deemed plaintiff's admission that**

12  **amendment is futile, and may result in the dismissal of this action with or**

13  **without prejudice on the grounds set forth above, on the ground that**

14  ///

15  ///

16  ///

17  ///

18

---

19      [11]The Clerk is directed to provide plaintiff with a Central District of California Civil

20  Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Second Amended Complaint if he elects to proceed in that fashion.  Any Second Amended Complaint must:  (a) be labeled

21  "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Original Complaint or First Amended Complaint – *i.e.*, it must include all claims on which

22  plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and

23  direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a

24  single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what the defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names

25  of all defendants in the caption and not include in the body of the Second Amended Complaint

26  defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); (h) be signed by plaintiff who is proceeding pro se (Fed. R. Civ. P. 11; Local Rule 11-1); and (i) not add

27  defendants or claims that are not reasonably related to the claim asserted in the previous

28  complaints.

1    **amendment is futile, for failure diligently to prosecute and/or for failure to**

2    **comply with this Order.**

3         IT IS SO ORDERED.

4

5    DATED:  October 31, 2022

6                                          /s/
                              _____

7                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE

8

9    Attachments

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28