UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KEIRON M. ELIAS,

                 Plaintiff,

       v.

C/O ROSAS, et al.,

               Defendants.

Case No. 2:21-cv-06052-MWF-JC

ORDER DISMISSING THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND AND DIRECTING PLAINTIFF TO RESPOND TO ORDER

## I.    INTRODUCTION

On July 27, 2021, Plaintiff Keiron M. Elias, who is in state custody, is proceeding *pro se*, and has been granted leave to proceed without prepayment of filing fees ("IFP"), filed a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983").  On November 11, 2021, the Court screened and dismissed the Original Complaint with leave to amend.  (Docket No. 8).  Plaintiff then filed a First Amended Complaint on April 26, 2022, and the Court screened and dismissed it with leave to amend on October 31, 2022.  (Docket Nos. 15, 16).  A Second Amended Complaint then followed on March 23, 2023, and the Court screened and dismissed it with leave to amend on July 3, 2023.  (Docket Nos. 20, 21, 23).

On September 29, 2023, the Court granted a motion to stay the case because Plaintiff had been moved to the county jail in connection with a pending resentencing proceeding and had no access to her[1] case files and other materials related to this case.  (See Docket Nos. 24-25).  Plaintiff proceeded to file periodic status reports.  (See Docket Nos. 26-28).  On June 18, 2024, because Plaintiff had been returned to state custody at Richard J. Donovan Correctional Facility (RJD) and was again in possession of her files, and no further extension was warranted, the Court lifted the stay and ordered Plaintiff to respond by filing either a Third Amended Complaint, a voluntary notice of dismissal, or a notice of Plaintiff's intent to stand on the Second Amended Complaint.  (Docket No. 31).

On July 24, 2024, Plaintiff filed a Third Amended Complaint (alternatively, "TAC")[2] against the following employees at California State Prison, Los Angeles County ("CSP-LAC"):  Correctional Officer ("C/O") Rosas, Lt. Martinez, and Associate Warden Williams and/or Warden Hor[n].[3]    (Docket No. 33).  Warden Horn is sued in is his individual and official capacities (see TAC 17, 19), while the other Defendants appear to be sued in their individual capacities only.  Liberally construed, the Third Amended Complaint asserts claims for violations of Plaintiff's religious rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 114 Stat. 803, 42 U.S.C.

---

[1]As Plaintiff's recent filings employ female pronouns to refer to Plaintiff, the Court does so here as well.

[2]Citations to Plaintiff's Third Amended Complaint and supporting exhibits refer to the page numbers from the Court's official Case Management/Electronic Case Filing (CM/ECF) system.

[3]Plaintiff's reference to "Warden Hor" is construed to refer to Pat Horn, a former warden of CSP-LAC.  Associate Warden Williams is not named in the caption of the Third Amended Complaint, but he is referenced in the claims and allegations.  As discussed below, Plaintiff sometimes indicates that Warden Horn has replaced Williams as a Defendant, but Plaintiff's intentions on that point remain unclear.

§ 2000cc et seq.,[4] and her Eighth Amendment rights to be free from cruel and unusual punishment and deliberate indifference to her serious medical needs.[5] (TAC at 5, 8-21). Plaintiff seeks $5 million in damages. (TAC at 24).

As the Third Amended Complaint is deficient in multiple respects, including those detailed below, it is dismissed with leave to amend.

## II. THIRD AMENDED COMPLAINT

The Third Amended Complaint, construed liberally, alleges the following:[6]

Plaintiff's religious beliefs are grounded in being "God in flesh as one." (TAC at 6). On June 11, 2018, Plaintiff filed an administrative complaint giving notice of her religious belief and "mental therapy." (TAC at 6). On July 16, 2018, Plaintiff submitted an administrative request form seeking relief from prison staff's disruptions and burdens upon her religious exercise. (TAC at 6). Administrative officials granted Plaintiff's request for the right to live in peace and to use Plaintiff's religious sacraments to ensure her "mental stability and safety" after Plaintiff had suffered two prior suicide attempts, and they assertedly did not dispute the $5 million "civil liability" that Plaintiff has placed on "any hinderence [sic] or punishment for the exercise of free will, peace and love," so long as Plaintiff did not harm anyone or disrupt the day-to-day operations of the prison. (TAC at 6). The prison psychologist understood that Plaintiff's

---

[4]Plaintiff also cites RFRA – i.e., the Religious Freedom Restoration Act of 1993, 107 Stat. 1488, 42 U.S.C. § 2000bb et seq. – but that Act is applicable only to the federal government, as it was held unconstitutional as applied to the states. See Cutter v. Wilkinson, 544 U.S. 709, 714-16 (2005) (discussing these Acts). Plaintiff's references to RFRA are therefore construed under RLUIPA.

[5]In addition, as addressed below, the Third Amended Complaint makes several references to Plaintiff's constitutional rights to due process and to be free from retaliation, though it is unclear whether Plaintiff intends to assert claims on these grounds.

[6]Plaintiff's account of the factual background of the case is largely copied from one of the Court's prior screening orders, but with some edits and additions. (Compare TAC at 6-8 with Docket No. 16 at 2-4).

perspective on death lends her a "strong likelihood" of committing suicide in prison whenever the "evils of this world" make her depression unbearable. (TAC at 6).

When Plaintiff was transferred to CSP-LAC, she immediately placed all staff and institutional officials on notice of her severe depression, past suicide attempts, and need "to be left alone in peace." (TAC at 6). She also put them on notice of the $5 million liability for violating her rights. (TAC at 6).

On May 6, 2019, Plaintiff was running "wind sprints" back and forth along the fence with headphones on "a little too loud" when she "realized inmates were getting down" and an alarm was sounding. (TAC at 6). At this realization, Plaintiff stopped running and got down "in a squat[t]ing position." (TAC at 6). Defendant C/O Rosas had the guard tower announce that all inmates needed to get down, but Plaintiff ignored this announcement because she was already down. (TAC at 6). C/O Rosas then approached Plaintiff and ordered her to "cuff up." (TAC at 6). Plaintiff peacefully complied and was taken to the "make shift police station in the gym" where she was forced to submit to an unclothed body inspection and was told by Rosas that she needed to be "all the way down on the ground" during alarms. (TAC at 6-7). Plaintiff was receptive to the counseling. (TAC at 7). Nonetheless, Rosas cited Plaintiff for violating a prison rule – title 15, section 3005, of the California Code of Regulations – by "willfully delaying a peace officer in the performance of duty." (TAC at 7).

On May 15, 2019, Defendant Lt. Martinez found Plaintiff guilty of the rule violation and punished Plaintiff with the loss of both yard and dayroom privileges for ninety days, depriving Plaintiff of outdoor physical activity for that period, even though prison regulations assertedly prohibit depriving inmates of outdoor exercise for longer than ten days "absent extreme circumstances." (TAC at 7). Defendant Williams, an Associate Warden, approved this decision. (TAC at 7). ///

4

Plaintiff was not present at the disciplinary hearing. (TAC at 7). Although Lt. Martinez claimed that another officer had informed him that Plaintiff refused to be present, Martinez did not provide any written waiver from Plaintiff, nor did he mention such officer in his report." (TAC at 7). When Plaintiff questioned Martinez about who this other officer was, Martinez became evasive. (TAC at 7). Martinez also did not deny that Plaintiff did not receive twenty-four-hour notice to prepare for the hearing. (TAC at 7).

Being confined to the cell for so long caused Plaintiff's depression, anxiety, and suicidal thoughts to "skyrocket," making Plaintiff unable to practice her "daily prayers and rituals" or obtain any relief from her sacraments. (TAC at 7). She had difficulty sleeping and would not clean up for herself, which caused three fights with her cellmate. (TAC at 7). Plaintiff asked Lt. Martinez for the restriction to be removed from her door, but he refused, even when assertedly told that he would be liable if he did not do so. (TAC at 7).

Although, as discussed below, it is not entirely clear, Plaintiff appears to claim, based on the foregoing allegations, that Defendants Rosas, Martinez, and Williams and/or Horn violated her religious rights under the First Amendment (see TAC at 5, 8-14); that Defendants Rosas, Martinez, and Williams and/or Horn violated her Eighth Amendment right to be free from cruel and unusual punishment and deliberate indifference to her "serious medical need for peace and tranquility in treatment of her vulnerability to suicide" (see TAC at 8, 14-19; and that Defendant Williams and/or Horn violated her religious rights under RLUIPA (see TAC at 5, 19-21).

**III.   PERTINENT LAW**

   **A.   The Screening Requirement**

As Plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Third Amended Complaint, and is required to dismiss the case at any time it concludes the action is frivolous

5

or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Dep't, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable, the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013).  Under Rule 8, each complaint filed in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (citing Twombly, 550 U.S. at 555)).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, 574 U.S. 10, 12 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility").  A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  Iqbal, 556 U.S. at 678 (citation omitted); see also Keates v. Koile, 883 F.3d 1228, 1242 (9th Cir. 2018)

6

("[A] [Section 1983] plaintiff must plead that each Government-official defendant,
through the official's own individual actions, has violated the Constitution.")
(quoting Iqbal, 556 U.S. at 676); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071
(N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against
*each* defendant" to satisfy Rule 8 requirements (emphasis added)).  Allegations
that are "merely consistent with" a defendant's liability, or reflect only "the mere
possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as
required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is
"plausible on its face."  Iqbal, 556 U.S. at 678-79 (citations and quotation marks
omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint
are assumed true, while "[t]hreadbare recitals of the elements of a cause of action"
and "legal conclusion[s] couched as a factual allegation" are not.  Id. (citation and
quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014)
("mere legal conclusions 'are not entitled to the assumption of truth'" (quoting
Iqbal, 556 U.S. at 678-79)), cert. denied, 574 U.S. 1077 (2015).  In addition, the
Court is "not required to accept as true conclusory allegations which are
contradicted by documents referred to in the complaint," Steckman v. Hart
Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and
"need not [] accept as true allegations that contradict matters properly subject to
judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979,
988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation
omitted).

In general, civil rights complaints are interpreted liberally in order to give
*pro se* plaintiffs "the benefit of any doubt."  Byrd, 885 F.3d at 642 (citations and
internal quotation marks omitted).  Nonetheless, a *pro se* plaintiff must still follow
the rules of procedure that govern all litigants in federal court, including the
Rule 8 requirement that a complaint minimally state a short and plain statement of

7

a claim that is plausible on its face.  See Ghazali v. Moran, 46 F.3d 52, 54 (9th Cir. 1995) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure." (citation omitted)), cert. denied, 516 U.S. 838 (1995); see also Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of [a] claim that were not initially pled." (quoting Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original)).

If a *pro se* complaint is dismissed for failure to state a claim, the court must "freely" grant leave to amend.  Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted). Nonetheless, courts have the discretion to deny leave to amend in cases of undue delay, bad faith, undue prejudice to the opposing party, "repeated failure to cure deficiencies by amendments previously allowed," and futility.  See Foman v. Davis, 371 U.S. 178, 182 (1962); Cafasso, 637 F.3d at 1058 (citations omitted). Courts have "particularly broad" discretion where a plaintiff "has previously amended the complaint."  Cafasso, 637 F.3d at 1058 (citation and quotation marks omitted); see also Griggs v. Pace Am. Grp., Inc., 170 F.3d 877, 879 (9th Cir. 1999) ("The trial court's discretion . . . is particularly broad where . . . a plaintiff previously has been granted leave to amend." (citations omitted)).

**B.    Section 1983 Claims**

To state a Section 1983 claim, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights.  42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits.  Iqbal, 556 U.S. at 676. (citing, *inter alia*, Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S.

658, 691 (1978)).  Hence, a government official may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation.  <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing <u>Iqbal</u>, 556 U.S. at 676), <u>cert. denied</u>, 571 U.S. 819 (2013).  A Section 1983 plaintiff must establish both causation-in-fact and proximate (*i.e.*, legal) causation.  <u>See</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).  Allegations regarding Section 1983 causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).  "Sweeping conclusory allegations [regarding causation] will not suffice . . . ."  <u>Id.</u> (citation omitted).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011), <u>cert. denied</u> 566 U.S. 982 (2012); <u>see also</u> <u>OSU Student Alliance</u>, 699 F.3d at 1069 (citing <u>Iqbal</u>, 556 U.S. at 676).  Under the latter theory, even absent "overt personal participation," a supervisor may be liable

under Section 1983 if he created, promulgated, implemented, advanced, or was otherwise responsible for the continued operation of a policy that "requires subordinates to commit constitutional violations," and enforcement of the policy (either by the defendant-supervisor or his subordinates) proximately caused the Plaintiff's constitutional injury.  OSU Student Alliance, 699 F.3d at 1076 (citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 563 U.S. 960 (2011)); see also Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (supervisory officials may be held liable "even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of a constitutional violation'" (citation and internal quotation marks omitted)).

**IV.    DISCUSSION**

The Third Amended Complaint is dismissed with leave to amend for violation of Rules 8 and 10 of the Federal Rules of Civil Procedure, among other deficiencies addressed below.

**A.    The Third Amended Complaint Violates Rules 8 and 10 of the Federal Rules of Civil Procedure**

Rule 8(a), as noted above, requires a complaint to provide "fair notice" of who is being sued, for what particular conduct, and in what particular claim.  See Twombly, 550 U.S. at 555 & n.3 (Rule 8(a) requires a complaint to give "fair notice" of the particular claims being asserted against them and "the grounds upon which [the claims] rest[]") (citation and quotation marks omitted); McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (purpose of Rule 8(a) is to ensure that a complaint "fully sets forth who is being sued, for what relief, and on what theory, with enough detail to guide discovery"); see also Cafasso, 637 F.3d at 1058 (a complaint violates Rule 8 if a defendant would have difficulty understanding and responding to the complaint).

Plaintiff's Third Amended Complaint violates Rule 8 because it fails to give adequate notice as to who is being sued and on what grounds.  First, as indicated above, it is unclear whether Plaintiff intends to sue Associate Warden Williams, Warden Horn, or both.  For example, the caption of the Third Amended Complaint includes Horn and not Williams, but some later statements of Plaintiff's claims reference Williams but not Horn.  (See TAC at 1, 5, 7-8).  At multiple points, Plaintiff states that Williams has been "repla[c]ed" by Warden Horn, the "repla[ce]ment defendant."  (See TAC at 7, 11).  Yet, if that is indeed the case, then it is unclear why Williams is sometimes referenced as a Defendant in the claims.  (See TAC at 5).  Additionally, although Plaintiff appears to indicate that her only claims are for violation of her religious rights under the First Amendment and RLUIPA and her Eighth Amendment rights to be free from excessive force and deliberate indifference (see TAC at 5), the Third Amended Complaint also later alludes to Plaintiff's constitutional rights to due process (see TAC at 8) and to be free from retaliation (see TAC at 10-11, 15, 24), making it unclear whether Plaintiff intends to assert independent claims on these grounds.[7]  As a result of these discrepancies, among others, Defendants are unable to clearly discern which claims and allegations are being asserted against them.

The Third Amended Complaint also appears to violate Rule 10(a) of the Federal Rules of Civil Procedure, which requires that "all the parties" be named in the caption.  See Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with . . . a title . . . .  The title of the complaint must name all the parties[.]").  As noted above, the caption on the first page of the Third Amended Complaint omits Associate Warden Williams, despite that Williams is later referenced (albeit inconsistently) as a Defendant in Plaintiff's claims.  (See TAC at 1, 5).

---

[7]As discussed below, Plaintiff's allegations fail at least to support a viable retaliation claim.

1  Accordingly, dismissal with leave to amend is warranted for violation of
2  Rules 8 and 10.  See Knapp v. Hogan, 738 F.3d 1106, 1109 & n.1 (9th Cir. 2013)
3  (violations of Rule 8's "short and plain statement" requirements "warrant
4  dismissal"), cert. denied, 574 U.S. 815 (2014); McHenry, 84 F.3d at 1178;
5  Ferdik v. Bonzelet, 963 F.2d 1258, 1263 (9th Cir.), as amended (May 22, 1992)
6  (affirming dismissal of action based on failure to comply with court order that
7  complaint be amended to name all defendants in caption as required by Rule
8  10(a)), cert. denied, 506 U.S. 915 (1992).  The Court will nevertheless highlight
9  some other deficiencies in the Third Amended Complaint.[8]

10  **B.    The Third Amended Complaint Fails to State a Claim for**
11  **Violation of Plaintiff's Religious Rights under the First**
12  **Amendment or RLUIPA**

13  Prisoners "retain protections afforded by the First Amendment" including
14  the right to "the free exercise of religion."  O'Lone v. Estate of Shabazz, 482 U.S.
15  342, 348 (1987) (citations omitted), superseded by statute on other grounds,
16  42 U.S.C. §§ 2000cc, et seq.  However, as a consequence of incarceration, a
17  prisoner's First Amendment rights are necessarily "more limited in scope than the
18  constitutional rights held by individuals in society at large."  Shaw v. Murphy, 532
19  U.S. 223, 229 (2001).  An inmate retains only "those First Amendment rights that
20  are not inconsistent with his status as a prisoner or with the legitimate penological
21  objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).

22  To state a First Amendment free exercise claim, an inmate must allege that a
23  prison official's actions (1) "substantially burden[ed]" the inmate's exercise of a
24  sincerely held religious belief; and (2) did so in an unreasonable manner – i.e., the
25  official's actions were not "rationally related to legitimate penological interests."

26

27  [8]While the Third Amended Complaint as a whole warrants dismissal with leave to amend
    for violation of Rules 8 and 10, dismissal at this juncture is not predicated on a failure to state an
28  Eighth Amendment claim against Defendants Martinez and Williams and/or Horn.

See O'Lone, 482 U.S. at 348-50; Jones v. Williams, 791 F.3d 1023, 1031, 1033 (9th Cir. 2015) (citation omitted); Shakur v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008) (citations omitted). "[G]overnment action places a substantial burden on an individual's right to free exercise of religion when it tends to coerce the individual to forego [his or] her sincerely held religious beliefs or to engage in conduct that violates those beliefs." Jones v. Williams, 791 F.3d at 1031-33 (citations omitted).

Plaintiff asserts that Defendants Rosas, Martinez, and Williams and/or Horn violated Plaintiff's First Amendment rights by punishing her for disobeying Rosas's order for all inmates to "get down on the ground," as Plaintiff's religious beliefs assertedly forbid obedience to anyone other than herself, who is "God in flesh." (See TAC at 5, 8-12). She asserts, moreover, that "getting down in the dirt at the command of someone else equates to being dethroned," and she allegedly cannot "allow [her]self to sit in the dirt at the command of another man, and be dethroned." (TAC at 8 (brackets omitted)). Plaintiff alleges that she had given all Defendants sufficient notice of these rights. (See TAC at 6, 8-11). She further contends that because she was in a squatting positing at the time, there was no legitimate penological interest in requiring her to go further down on the ground or for punishing her refusal to do so. (See TAC at 10).

Plaintiff fails to demonstrate any First Amendment violation here. Correctional officers obviously have a strong and legitimate penological interest in requiring inmates to obey their orders and in punishing inmates' failure to do so. In particular, there is certainly nothing unreasonable about an order to get down on the ground when an alarm is triggered to preserve order and safety during an inmate fight, no matter how unnecessary Plaintiff may believe this was. Moreover, even if having to obey any officers' rules and commands conflicts in general with Plaintiff's religious belief in her personal sovereignty as "God" on

///

her "throne," Plaintiff cannot plausibly show that the command at issue imposed a substantial burden on her religious exercise.

Plaintiff further claims that her First Amendment religious rights were violated when Defendant Rosas subjected her to a strip search. (TAC at 13-14). However, Plaintiff's vague, conclusory assertion that her "belief forbid[]s [her] getting naked in front of or by Men" (TAC at 13) does not plausibly show that the search actually conflicted with – and substantially burdened – a belief that was "sincerely held" and "rooted in religious belief." See Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (for First Amendment claim, belief "must be sincerely held" and "must be rooted in religious belief, not in 'purely secular' philosophical concerns" (citations omitted)); see also White v. Davenport, 2024 WL 5237438, at *6 (C.D. Cal. Nov. 13, 2024) ("While courts will not second-guess the reasonableness of a plaintiff's assertion that a requirement conflicts with her religious beliefs, a plaintiff still must allege what the conflict is." (citing Bolden-Hardge v. Office of Cal. State Controller, 63 F.4th 1215, 1223 (9th Cir. 2023))), report and recommendation adopted, 2025 WL 268850 (C.D. Cal. Jan. 22, 2025).

Accordingly, the Second Amended Complaint fails to state a First Amendment free exercise claim. See O'Lone, 482 U.S. at 348-50. Plaintiff also fails to state a claim under RLUIPA, which similarly requires pleading a substantial burden on her religious exercise.[9] See Warsoldier v. Woodford, 418 F.3d 989, 994-95 (9th Cir. 2005) (under RLUIPA, plaintiff bears initial burden to demonstrate that defendant's actions substantially burden the exercise of his religious beliefs (citing 42 U.S.C. § 2000cc-2(b)). In sum, Plaintiff's allegations do not establish a substantial burden, or a "significantly great restriction or onus

_____

[9]Although unclear, it appears that Plaintiff's RLUIPA claim is predicated solely on the disciplinary matter (and resulting sanctions) regarding Plaintiff's failure to obey Rosas's order to get on the ground, not the strip search. (See TAC at 5, 19-20).

upon [religious] exercise," to support a violation of her religious rights under RLUIPA or the First Amendment.  <u>New Harvest Christian Fellowship v. City of Salinas</u>, 29 F.4th 596, 602 (9th Cir. 2022), <u>cert. denied</u>, 143 S. Ct. 567 (2023).

**C.    The Third Amended Complaint Fails to State a First Amendment Retaliation Claim**

"Prisoners have a First Amendment right to file grievances against prison officials . . . ."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citation omitted).  Retaliation against a prisoner for exercising his First Amendment right to seek redress/access the court is an independent constitutional violation.  <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009).  To prevail on a First Amendment retaliation claim, an inmate must prove that (1) the plaintiff/inmate engaged in conduct that is protected under the First Amendment; (2) a prison official took "adverse action" against the inmate; (3) the inmate's protected conduct was the "substantial or motivating factor" behind the prison official's action; (4) the official's retaliatory action "would chill or silence a person of ordinary firmness from future First Amendment activities"; and (5) the action "did not advance legitimate goals of the correctional institution" because it was either "arbitrary and capricious" or "unnecessary to the maintenance of order in the institution."  <u>Watison</u>, 668 F.3d at 1114-15 (citations and internal quotation marks omitted).  A complaint that does not allege a "chilling effect" may still state a viable retaliation claim if it alleges that the plaintiff "suffered some other harm . . . that is more than minimal. . . ."  <u>Id.</u> at 1114 (citations and internal quotation marks omitted).

To satisfy the causation element of a First Amendment retaliation claim, an inmate/plaintiff must demonstrate that there was a specific causal link between the defendant's alleged retaliatory conduct and the inmate's exercise of a constitutional right.  <u>See generally</u> <u>Hartman v. Moore</u>, 547 U.S. 250, 259 (2006) (citations omitted); <u>Pratt v. Rowland</u>, 65 F.3d 802, 807-08 (9th Cir. 1995).  A

1  plaintiff may do so either with direct evidence of a defendant's retaliatory motive,

2  or with circumstantial evidence of the defendant's knowledge of the protected

3  conduct at issue *plus* some other evidence probative of retaliatory intent, such as

4  "(1) proximity in time between protected speech and the alleged retaliation;

5  (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other

6  evidence that the reasons proffered by the [defendant] for the adverse . . . action

7  were false and pretextual."  McCollum v. Cal. Dep't of Corr. &  Rehab., 647 F.3d

8  870, 882 (9th Cir. 2011) (citation and quotation marks omitted; alterations in

9  original); see generally Watison, 668 F.3d at 1114 (direct evidence of retaliatory

10 intent "rarely" available).

11      Here, to the extent that Plaintiff intends to assert a First Amendment

12 retaliation claim, such claim fails at least because Plaintiff's allegations do not

13 establish causation.  Plaintiff asserts that Defendant Rosas, by issuing the RVR,

14 acted "in retaliation for grievances and civil complaints filed against several

15 officers just 60 days previously."  (TAC at 10).  However, absent any facts to

16 suggest that Defendant actually knew about Plaintiff's protected conduct, the

17 alleged sixty-day proximity is insufficient to raise a plausible inference that the

18 protected conduct was a "substantial or motivating factor" behind any Defendant's

19 actions against her.

20      **D.    The Third Amended Complaint Fails to State an Eighth**

21          **Amendment Claim Against at Least Defendant Rosas**

22      The Eighth Amendment's prohibition against cruel and unusual punishment

23 protects prisoners from inhumane conditions of confinement.  Morgan v.

24 Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511

25 U.S. 825, 832 (1994)).  Prison officials therefore have a "duty to ensure that

26 prisoners are provided with adequate shelter, food, clothing, sanitation, medical

27 care, and personal safety."  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000),

28 cert. denied, 532 U.S. 1065 (2001).

1    Nevertheless, "a prison official violates the Eighth Amendment only when

2    two requirements are met.  First, the deprivation alleged must be, objectively,

3    'sufficiently serious,'" in that the official's act or omission resulted "in the denial

4    of 'the minimal civilized measure of life's necessities[.]'"  Farmer, 511 U.S. at 834

5    (citations omitted); Norbert v. City & County of San Francisco, 10 F.4th 918, 927

6    (9th Cir. 2021).  "This requires the inmate to demonstrate 'conditions posing a

7    substantial risk of serious harm' that present an 'excessive risk to [his] health or

8    safety.'"  Norbert, 10 F.4th at 928 (quoting Farmer, 511 U.S. at 834, 837).  The

9    second requirement is subjective – a prison official is not liable for denying an

10   inmate humane conditions of confinement unless the official acted with a

11   deliberately indifferent state of mind.  Farmer, 511 U.S. at 834; see also Norbert,

12   10 F.4th at 928 ("The subjective requirement, relating to the defendant's state of

13   mind, requires deliberate indifference." (citation omitted)).

14   Deliberate indifference in violation of the Eighth Amendment exists when a

15   prison official knows an inmate faces a substantial risk of serious harm to his

16   health and fails to take reasonable measures to abate the risk.  Farmer, 511 U.S. at

17   847; Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); see

18   also Parsons v. Ryan, 754 F.3d 657, 677 (9th Cir. 2014) ("[W]e have repeatedly

19   recognized that prison officials are constitutionally prohibited from being

20   deliberately indifferent to policies and practices that expose inmates to a

21   substantial risk of serious harm.").  "Under this standard, the prison official must

22   not only 'be aware of facts from which the inference could be drawn that a

23   substantial risk of harm exists,' but that person 'must also draw the inference.'"

24   Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837); Castro v. County of

25   Los Angeles, 833 F.3d 1060, 1068 (9th Cir. 2016) (en banc), cert. denied, 580

26   U.S. 1099 (2017).  "If a [prison official] should have been aware of the risk, but

27   was not, then the [official] has not violated the Eighth Amendment, no matter how

28   ///

17

1  severe the risk." <u>Toguchi</u>, 391 F.3d at 1057 (citation omitted); <u>Peralta v. Dillard</u>,

2  744 F.3d 1076, 1087 (9th Cir. 2014) (en banc), <u>cert. denied</u>, 574 U.S. 1073 (2015).

3  Plaintiff claims her Eighth Amendment rights were violated by Defendants

4  Rosas, Martinez, and Williams and/or Horn when Plaintiff was deprived of any

5  outdoor exercise for ninety days as punishment for disobeying C/O Rosas's order

6  to get on the ground during the alarm. (<u>See</u> TAC at 5, 14-19). This claim fails to

7  meet the subjective requirement, at least with respect to Defendant C/O Rosas,

8  because Rosas had no apparent role in deciding (or approving) the punishment that

9  resulted from the RVR she issued. Plaintiff acknowledges this, but insists that

10 Rosas still should be held liable because he opted to issue a "serious" RVR,

11 allegedly while knowing this would result in a "far more severe punishment" than

12 would an RVR based on a lesser offense that might instead have been warranted

13 by the circumstances. (TAC at 15). Plaintiff asserts that this "set into motion the

14 ability of [D]efendant Martinez to issue the harsher punishment . . . ." (TAC at

15 15). That is not enough, however, as there is nothing here to show that Rosas

16 actually knew the RVR would subject Plaintiff to a serious risk of harm.

17 Accordingly, the Third Amended Complaint fails to state an Eighth Amendment

18 claim against at least Defendant Rosas.

19    **E.    Plaintiff's Challenges to Disciplinary Proceedings Appear to Be**

20         **Barred by <u>Heck</u>**

21    Under the "favorable termination doctrine" set forth in <u>Heck v. Humphrey</u>,

22 the district court must dismiss a state prisoner's Section 1983 claim for damages if

23 "judgment in favor of the plaintiff would necessarily imply the invalidity of his

24 conviction or sentence . . . unless the plaintiff can demonstrate that the conviction

25 or sentence has already been invalidated." <u>Heck v. Humphrey</u>, 512 U.S. 477,

26 486-87 (1994). This doctrine has been extended to apply in the prison disciplinary

27 context where the "defect complained of by [Plaintiff] would, if established,

28 necessarily imply the invalidity of the deprivation of his good-time credits[,]"

1    Edwards v. Balisok, 520 U.S. 641, 646 (1997); Nonnette v. Small, 316 F.3d 872,

2    875 (9th Cir. 2002), cert. denied, 540 U.S. 1218 (2004), and if the restoration of

3    those credits "necessarily" would "affect the duration of time to be served."

4    Muhammed v. Close, 540 U.S. 749, 754 (2004) (per curiam); see also Nettles v.

5    Grounds, 830 F.3d 922, 929 n.4 (9th Cir. 2016) (en banc) ("Heck applies only to

6    administrative determinations that 'necessarily' have an effect on 'the duration of

7    time to be served[,]'" (citations omitted)), cert. denied, 580 U.S. 1063 (2017).

8          Here, to the extent that Plaintiff seeks a speedier release from custody, or a

9    favorable determination on Plaintiff's claim(s) would necessarily accomplish this,

10   such claims are barred, and a petition for habeas corpus is Plaintiff's exclusive

11   remedy.  See Nettles, 830 F.3d at 929 n.4.

12   **V.    ORDERS**[10]

13         In light of the foregoing, IT IS HEREBY ORDERED that the Third

14   Amended Complaint is dismissed with leave to amend.[11]

15         IT IS FURTHER ORDERED that within twenty-one (21) days of the date of

16   this Order, Plaintiff must do one of the following:

17   ///

18   ///

19

20         [10]The Magistrate Judge's orders herein constitute non-dispositive rulings on pretrial

21   matters.  See McKeever v. Block, 932 F.2d 795, 797-98 (9th Cir. 1991) (magistrate judges can

     dismiss complaints with leave to amend; dismissal of complaint with leave to amend is

22   non-dispositive matter).  To the extent a party disagrees with such non-dispositive rulings, such

23   party may file a motion for review by the assigned District Judge within fourteen (14) days.  See

     Local Rule 72-2.1.  To the extent a party believes the rulings to be dispositive, rather than non-

24   dispositive, such party has the right to object to this Court's determination that the rulings are

     non-dispositive within fourteen (14) days.  A party will be foreclosed from challenging the

25   rulings herein if such party does not seek review thereof, or object thereto.

26         [11]As indicated above, the Third Amended Complaint as a whole is dismissed with leave

27   to amend against all Defendants because it violates Rules 8 and 10, but the Court does not deem

     it appropriate, at this juncture, to predicate such dismissal on the failure to state an Eighth

28   Amendment claim against Defendants Martinez and Williams and/or Horn.

1     1.     File a Fourth Amended Complaint which cures the pleading defects

2   set forth herein;[12] or

3     2.     Sign and file the attached Notice of Dismissal which will result in

4   the voluntary dismissal of this action without prejudice; or

5     3.     File a Notice of Intent to Stand on Third Amended Complaint,

6   indicating Plaintiff's intent to stand on the Third Amended Complaint despite the

7   pleading defects set forth herein, which may result in the dismissal of this action in

8   its entirety based upon such defects.

9         **Plaintiff is cautioned that Plaintiff's failure timely to file a Third**

10  **Amended Complaint, a Notice of Dismissal, or a Notice of Intent to Stand on**

11  **Third Amended Complaint may be deemed Plaintiff's admission that**

12  **amendment is futile, and may result in the dismissal of this action with or**

13  **without prejudice on the grounds set forth above, on the ground that**

14  ///

15  ///

16  ///

17  ///

18

19

20  [12]The Clerk is directed to provide Plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate Plaintiff's filing of a Fourth Amended Complaint if Plaintiff elects to proceed in that fashion.  Any Fourth Amended Complaint must:  (a) be labeled "Fourth Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the prior complaints – *i.e.*, it must include all claims on which Plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of each of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief in sequentially "numbered paragraphs, each limited as far as practicable to a single set of circumstances" (Fed. R. Civ. P. 10(b)); (f) allege specifically what the Defendant did and how that individual's conduct specifically violated Plaintiff's civil rights; (g) state the names of all Defendants in the caption and not include in the body of the Fourth Amended Complaint any Defendants who are not also named in the caption (Fed. R. Civ. P. 10(a)); (h) be signed by Plaintiff who is proceeding pro se (Fed. R. Civ. P. 11; Local Rule 11-1); and (i) not add Defendants or claims that are not reasonably related to the claim asserted in the previous complaints.

**amendment is futile, for failure diligently to prosecute and/or for failure to comply with this Order.**

IT IS SO ORDERED.

DATED:  April 7, 2025

_____/s/_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

Attachments